# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DWAYNE LESUEUR, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>   Defendant. ) | Case No. 4:13-CV-347-NAB |

## MEMORANDUM AND ORDER

The following opinion is intended to be the opinion of the Court judicially reviewing the denial of Dwayne Lesueur's ("Lesueur") application for disability insurance benefits and supplemental security income ("SSI") under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.] The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcript and the medical evidence. The Court has now heard oral argument on the pleadings of the parties and the Court now issues its ruling in this opinion.

**I.     Issues for Review**

Lesueur presents four errors for review: First, Lesueur contends that the administrative law judge's ("ALJ") assessment of his mental impairments is not supported by substantial evidence. Second, the ALJ erred in her evaluation of the medical opinions of Lesueur's treating and examining physicians. Third, the ALJ erred in not considering Lesueur's work history when

assessing credibility. Fourth, the ALJ's residual functional capacity ("RFC") determination did not reflect the weight given to the opinion of the state agency medical consultant.

## II.     Standard of Review

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989). Additionally, an ALJ's decision must comply "with the relevant legal requirements." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

**III.     Discussion**

Based on all of the evidence in the record, the Court finds that the ALJ's RFC determination and credibility assessment are not supported by substantial evidence in the record as a whole.  Thus, substantial evidence does not support the ALJ's final decision that Lesueur is not disabled and the final decision must be reversed.

**A.     RFC Determination**

RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[1]  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record.  *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ determined that Lesueur had the severe impairments of depression, anxiety, and schizoaffective disorder, but that he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 18.)  The ALJ found that Lesueur had the RFC to perform a full range of work limited to routine, repetitive tasks.  (Tr. 20.)  She specifically stated that Lesueur was capable of work that included frequent interaction with the general public, co-workers, and supervisors.

---

[1] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  SSR 96-8p, 1996 WL 374184, at *1.

(Tr. 20.)  The ALJ's RFC determination, including the assessment of the medical evidence, testimony, and Lesueur's credibility is inconsistent with the administrative record.

First, the ALJ's determinations regarding the medical evidence are inconsistent with the evidence in the record.  The ALJ's assertion that Lesueur "may not even have a psychological impairment that imposes much in terms of functional limitation" is not supported by the objective medical evidence.  The record shows that Lesueur has been hospitalized for psychiatric treatment three times since the alleged onset date of disability.  (Tr. 254-275, 339-369, 380-393.)  Lesueur received psychiatric treatment continuously since the alleged onset date of disability from the Hopewell Center.  (Tr. 281-289, 318-337, 374-379.)  Although Lesueur reported non-compliance with medication, the treatment notes cited indicate that the partial compliance with medication could be attributable to side effects.  (Tr. 319.)

The ALJ's decision gave the medical opinions of Dr. Surenda Chaganti, Dr. Arif Habib, and Dr. Erickson Smith little to no weight, stating that the opinions were not generally supported by the record as a whole and were contradicted by Lesueur's stated "social" and "acknowledged" activities, and the doctor's treatment records.  (Tr. 22-23.)  Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it.  *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).  A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole."  *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007).  A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p; *see also Hacker*, 459 F.3d at 937.  "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always

4

give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if [the conclusions] are inconsistent with the record as a whole." *Id.* "Unless, a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist or other medical specialist." 20 C.F.R. §§ 404.1527(e)(2)(ii); 416.927(e)(2)(ii).

As an initial matter, Dr. Chaganti and Dr. Habib did not prepare "opinions" regarding Lesueur's functional limitations for work-related activities. The record only contains their treatment notes from Hopewell, St. Alexius Hospital, and St. Louis University Hospital. Therefore, it is unclear what "opinions" given by these doctors do not support their treatment notes. Further, as explained in more detail below, the ALJ's credibility determinations regarding Lesueur's daily activities and social life are not supported by substantial evidence and cannot be used to discount the physicians' treatment records. Thus, the ALJ has failed to give a good reason as to why the treatment notes of Dr. Chaganti and Dr. Habib were given little weight. The treatment notes of Lesueur's treating and examining physicians, including Dr. Chaganti, Dr. Habib, Dr. Goswani, and Dr. Smith are consistent with each other and the record as a whole.

The ALJ gave moderate weight to the opinion of Social Security medical consultant Dr. Sherry Bassi. Dr. Bassi did not examine Lesueur, therefore her opinion was based on the medical evidence in the record until October 27, 2010, well before most of the medical treatment documented in the record occurred. "The opinion of a consulting physician who examines a

5

claimant once or not at all does not generally constitute substantial evidence." *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999).  Based on the foregoing, it is unclear the basis for the ALJ's RFC determination.

It is true that "[a] disability claimant has the burden to establish [his] RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)).  However, the ALJ has an independent duty to develop the record despite the claimant's burden.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  RFC is a medical question.  *Eichelberger*, 390 F.3d at 591.  "Some medical evidence must support the determination of the claimant's RFC." *Eichelberger*, 390 F.3d at 591 (citing *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000)) (internal quotation marks omitted).  "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'"  *Id.* (quoting *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2003)).

In some cases, the duty to develop the record requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision.  *See* 20 C.F.R. § 404.1519a(b).  "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011); *see also Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) ("'[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.'" (quoting *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985))).  Therefore, "[a]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

In this case, the Court finds that the ALJ had a duty to further develop the record to obtain medical evidence to assist in the determination of the RFC in this matter. There is no medical evidence in the record to support an RFC determination that Lesueur is capable of work that includes frequent interaction with the general public, co-workers, and supervisors.

**B.      Credibility Determination**

Second, the ALJ's credibility determination is also inconsistent with the evidence in the record as a whole. While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. *Id.* The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. *Id.* The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions

7

*Id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Masterson*, 363 F.3d at 738. "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence." *Id.* The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004.) The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988).

The ALJ found Lesueur not credible citing an "active" social life and documented non-compliance. (Tr. 18-19, 23.) The ALJ decision repeatedly mentions "social activities," "socializing," and "acknowledged activities" in discrediting the treating physicians' opinions, Lesueur's alleged symptoms and limitations, and the third-party witness statement of Louis Jackson. (Tr. 23-24.) At the outset, the Court notes there is no evidence in the record that Lesueur has an "active" social life. The ALJ has not cited to any evidence that would demonstrate that Lesueur's daily activities could even be construed in such a way. The ALJ cites to Lesueur's adult function report, Jackson's third-party statement, and a single treatment note to support the weak credibility finding. (Tr. 19, 21.)

In his adult function report, Lesueur states that his daily activities included brushing his teeth, sleeping, and listening to the radio. (Tr. 207.) Lesueur lives alone and does not care for anyone else or any pets. (Tr. 208.) Lesueur stated that he cannot be around people because he is highly irritable, depressed, afraid to be around people, goes out alone, and he does not go out much or spend time with others. (Tr. 209-212.) Lesueur stated in his function report and testified that he shops for groceries once a month. (Tr. 51, 210.) He prepares simple meals in

8

the microwave and has decreased personal grooming habits.  (Tr. 208-209.)  Lesueur testified that he had a best friend, but that they were not speaking at the time of the hearing.  (Tr. 49.) Lesueur also walks or uses public transportation, because he was in an "almost fatal car crash" and decided not to renew his driver's license.  (Tr. 42-43, 210.)  In Johnson's third party statement, Johnson states that Lesueur "doesn't go out much," has "sloppy dress," "very rarely" goes out, has "poor communication skills and attention span", and is "withdrawn."  (Tr. 223-228.)  Further, Lesueur's statements to his therapist that he could have sexual relationships, but was looking for a long term relationship and that most of his problems come from no one willing to love him, does not indicate an active social life.  (Tr. 210, 212, 375.)  As summarized above, Lesueur's adult function report and testimony, Johnson's third-party function report, and the treatment notes do not indicate any activities that would demonstrate an active social life.  The ALJ's repeated statements that Lesueur's allegations are inconsistent with the record as a whole are also not supported by a review of the record.

The Court notes for the record that the ALJ made several unsubstantiated and improper comments about Lesueur's receipt and pursuit of public assistance for food and housing, unemployment benefits, and disability benefits to discredit him.  (Tr. 19-22.)  These comments include the following:  "He had the wherewithal to seek medical attention when he purportedly was contemplating suicide and has pursued disability and public assistance in housing and other areas as if they were full time jobs while denying any other problems" and "he collected unemployment and refused medical treatment, instead demanding assistance to find housing." (Tr. 19, 22.)  In support of these comments, the ALJ's decision cites to an ALJ hearing decision in a prior application for disability benefits, medical records from Lesueur's hospitalization at St. Alexius in September 2010, and treatment records from Hopewell.  The ALJ's decision from a

9

prior determination is not before the court and in any event does not constitute "evidence." (Tr. 78-92.) The treatment notes from Hopewell and St. Alexius do not indicate that he pursued public assistance like a "full time job" or "demanded" housing assistance. (Tr. 257-275, 280-289, .) Lesueur mentioned to the therapist at Hopewell that he was denied disability benefits the day after a decision was issued and that his disability claim was pending. (Tr. 289, 319, 331.) During one visit to his case worker, Lesueur stated that he did not want to talk to her. (Tr. 326.) According to this case worker, Lesueur stated that "he just wanted to get some medications and he wanted [the] counselor to find him a place to live" and "all he wanted to do was to see the doctor." (Tr. 326.) Lesueur was homeless during part of the time that his application for disability benefits was pending. (Tr. 330, 336-337.) Upon review of the citations to the record, the ALJ's characterization of these records is not accurate. Moreover, a person's credibility should not be lessened because he pursues and receives benefits for food and shelter that he is entitled to receive. Whether a claimant receives public benefits is irrelevant to the question of whether he is eligible for disability insurance or SSI benefits. Although a claimant's financial motivation can be considered when other factors cast doubt upon the claimant's credibility, the application for and receipt of public assistance is not part of a valid credibility determination. *See Ramirez v. Barnhart*, 292 F.3d 576, 582 (8th Cir. 2002) (all claimants are financially motivated to some extent, but a claimant's financial motivation may contribute to an adverse disability determination only when other factors cast doubts upon the claimant's credibility); *see also Primm v.* Astrue, No. 4:07-CV-901 RWS, 2008 WL 4151672 at *13 (E.D. Mo. Sept. 2, 2008) (ALJ's discounting of claimant's credibility due to "benefit seeking behavior" not valid); *Caldwell v. Sullivan*, 736 F.Supp 1076, 1081 (D. Kan. 1990) (ALJ's credibility determination demonstrated a shocking distrust of plaintiff's motivations and improperly highly scrutinized

claimant because she was not wealthy, which was distasteful and legally unsupportable.) Lesueur's testimony and adult function report was consistent with the medical evidence in the record and the ALJ does not cite to any legitimate inconsistencies in the record that would allow for his credibility to be discounted. *See Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (ALJ can discount claimant's allegations if there is evidence that a claimant was a malingerer or exaggerated symptoms for financial gain).

> The acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability.  However, the negative impact cannot be uniformly or automatically applied in every case.  Where, as here, there is no other evidence to detract from the claimant's credibility, the negative inference is not sufficient, of itself, to negate the claimant's credibility.

*Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (internal citations omitted).

Finally, the ALJ failed to take into account whether Lesueur's failure to comply with his medications or visit his doctor was a result of his mental illness. *Pate-Fires v. Astrue*, 564 F.3d 935, 946 (8th Cir. 2009).  "[F]ederal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself and, therefore [is] neither willful nor without a justifiable excuse." *Pate-Fires*, 564 F.3d at 945.  There may be substantial evidence to support a finding that Lesueur knew he needed to take his medication, but that would not resolve the relevant question of whether his failure or refusal to follow prescribed treatment was a manifestation of his schizoaffective disorder and depression. *Id.* at 946.  Furthermore, "[w]hile medication might help control [his] condition, it does not alleviate the possibility [he] will relapse." *Pate-Fires*, 564 F.3d at 947. "[I]naccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005).

11

In conclusion, the ALJ's finding of no disability is not supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Lesueur seeks in his Complaint and Brief in Support of Complaint is **GRANTED in part and DENIED in part**.  [Docs. 1, 17]

**IT IS FURTHER ORDERED** the ALJ's decision of March 26, 2012 is **REVERSED** and **REMANDED** for a consultative examination of Lesueur's non-exertional functional limitations and a new residual functional capacity determination.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

Dated this 8th day of January, 2014.

      /s/ Nannette A. Baker  
NANNETTE A. BAKER  
UNITED STATES MAGISTRATE JUDGE